NORTH CAROLINA     FILED     IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
GUILFORD COUNTY     2018 MAY 18 P 2:36     18 CVS 550

GUILFORD COUNTY, C.S.C.
BY CMW

VAULT, LLC,

    Plaintiff,

v.

DELL, INC.,

    Defendant.

**COMPLAINT**
**(JURY TRIAL DEMANDED)**

COMES NOW Plaintiff Vault, LLC, by and through counsel, complaining of Defendant Dell, Inc., and alleges and states as follows:

1. Plaintiff Vault, LLC ("Vault") is a limited liability company organized under the laws of North Carolina with a principal place of business in Guilford County, North Carolina.

2. Defendant Dell, Inc. ("Dell") is a corporation organized under the laws of Delaware doing business in North Carolina.

3. This Court has jurisdiction over Defendant pursuant to N.C. Gen. Stat. § 1-75.4.

4. Venue is proper pursuant to N.C. Gen. Stat. § 1-80.

5. Vault manufactures protective enclosures, bases, and accessories for electronic tablets used in commercial Point of Sale systems. Vault's enclosures are highly configurable and can be customized to fit a variety of applications and environments. Vault is an industry-leading producer of tablet enclosures and has worked with a variety of electronics companies.

6. In October of 2015, Vault was contacted by Sherie Meek, Program Manager of Original Equipment Manufacturers for Dell, regarding the Dell Venue 8 Pro 5855 tablet (the "Tablet"). Ms. Meek and her team invited Vault to participate in designing a Venue 8 Pro 5855 Product Sleeve enclosure (the "Product") for the Tablet. According to Ms. Meek and her team,

the Tablet would be distributed through two channels: (1) through Dell itself, where direct Dell Sales representatives would handle the accounts; or (2) through Original Equipment Manufacturer ("OEMs") customers of Dell.

7. Specifically, Ms. Meek and her team represented to Vault President James Cagle that one of Dell's OEMs, Oracle/Micros ("Oracle"), needed "tens of thousands" of Product units. Ms. Meek represented this figure to be potentially as high as 75,000 units, and at a minimum 15,000 units.

8. Additionally, Ms. Meek and her team represented to Vault that thousands of Dell's worldwide sales representatives would be selling the Product globally and that other OEMs would be interested in large orders as well. Ms. Meek and her team predicted and represented to Vault that the project would ultimately have an estimated value of over twenty million dollars.

9. Dell specified that Vault's Product was to be designed exclusively for the Tablet.

10. Mr. Cagle initially expressed concerns about Vault designing the Product exclusively for the Tablet because of the frequency with which tablets are updated in the electronics industry. On a previous occasion, Vault had spent time and resources designing and manufacturing products for a line of Dell electronics, only to learn that Dell was terminating that line. This resulted in wasted resources and unusable inventory for Vault. Upon hearing Mr. Cagle's concern regarding the lifespan of the Tablet, Ms. Meek and Dell representatives Mike Griffith and John McDonald guaranteed that the end-of-life date for the Tablet would occur no earlier than February 2018.

11. As Ms. Meek, Mr. Griffith and Mr. McDonald understood, this guarantee was essential to Vault's decision to enter into an agreement with Dell. In order to produce the Product, Vault would be required to spend a large amount of resources up front to develop, design, and

begin manufacturing the Product. Vault would only be able to recover these up-front costs if the Tablet's lifespan extended to February 2018.

12. Relying on the representations made by Ms. Meek, Mr. Griffith, and Mr. McDonald regarding the end-of-life date for the Tablet, Vault entered into an agreement with Dell to develop, design, and manufacture the Venue 8 Pro 5855 Sleeve enclosure for the Tablet.

13. Dell arranged for its purchasing agent, World Wide Technology ("WWT"), to purchase a large number of Product units from Vault pursuant to purchase orders dated June 30, 2016; July 25, 2016; and September 29, 2016. A copy of WWT's purchase orders is attached as Exhibit A. Dell provided to Vault all instruction and direction on the completion of the purchase orders made by WWT.

14. Additionally, Dell arranged for its purchasing agent, Synnex Corporation ("Synnex"), to purchase additional components to the Product units pursuant to purchase orders dated late August to early October 2016. A copy of Synnex's purchase orders is attached as Exhibit B. Dell provided to Vault all instruction and direction on the completion of the purchase orders made by Synnex.

15. As the project moved forward, the scope of the work required for the project changed dramatically. One of the largest changes occurred as Universal Serial Bus ("USB") 3.1 technology was released. The implementation of USB 3.1 technology caused significant issues and delays with configuring the Product and Tablet. Inquiries to Dell concerning USB 3.1 technology were met with answers that Dell engineers did not yet have a clear understanding of this new technology.

16. Additionally, Vault discovered problems related to certain power oscillation issues with the Tablet. These problems were not disclosed by Dell and not discovered by Vault until near the end of the project.

17. At Dell's direction and instruction, Vault engineers addressed the issues caused by the USB 3.1 technology and the power oscillation problems and designed solutions to these issues.

18. Furthermore, Dell repeatedly demanded that Vault complete additional case modifications to the Product that were not in the original scope of the project.

19. After reprogramming the Product to overcome these USB 3.1 and power oscillation issues with the Tablet and completing the numerous case modifications, Vault delivered an updated Product to Dell.

20. On or about November 14, 2016, Ms. Meek, Mr. Griffith, Mr. McDonald, as well as Paul Schleicher and Douglas Barrett at Oracle, all confirmed that Vault's solutions worked. As directed by Dell, Vault produced custom-made Product units for Oracle. These units included Oracle's trademarked logos, custom programming, and custom physical modifications specific to Oracle's direction to Dell.

21. Shortly thereafter, on or about December 1, 2016, Mr. McDonald notified Vault that the end-of-life for the Tablet was effective immediately instead of the previously promised February 2018.

22. On or about December 2, 2016, Ms. Meek notified Oracle that the end-of-life date for the Tablet was already in effect. Three days later, Ms. Meek notified Vault that Oracle had canceled its order with Dell as a result.

23. Afterwards, Vault worked with Dell to attempt to find a substitute purchaser for the Product units. During that time, Mr. Cagle had several conversations with Dell representatives

4

concerning payment owed to Vault by Dell on these purchase orders. Joe Maloney, Senior Vice President at Dell, personally confirmed that Dell owed Vault the total amount due on these purchase orders. In fact, Dell committed to issue new purchase orders to Vault in place of the WWT and Synnex purchase orders as WWT and Synnex. Dell made this commitment at WWT and Synnex's request over their concern to remove any potential liability to Vault. To date, Dell has failed to issue those new purchase orders.

24. On or about August 11, 2017, Mr. McDonald informed Vault that a potential substitute purchaser for the Product units had withdrawn its interest. Furthermore, Dell had not located and continues to be unable to locate any other substitute purchasers.

25. Vault has been left with thousands of units containing the Oracle logo, specific coding requested by Dell for Oracle, and physical modifications designed for Oracle. These modifications have essentially rendered the Product units unsalable after Oracle canceled its order with Dell. No other purchasers were interested in these units built to Oracle's specifications. Furthermore, there is now no more market for the Product in light of the December 1, 2016 end-of-life date for the Tablet.

26. In order to induce Vault to enter into a relationship with Dell, Dell, through its representatives Ms. Meek, Mr. Griffith and Mr. McDonald, knowingly and falsely represented the end-of-life date for the Tablet as February 2018 and the estimated value of the project at 20 million dollars. Neither representation was true. Furthermore, those Dell representatives knowingly and falsely maintained that the end-of-life date for the Tablet would not be until February 2018 throughout the time Vault was working to correct the USB 3.1 and power oscillation issues related to the Tablet as well as to complete the requested case modifications. Dell's failure to notify Vault

5

Case 1:18-cv-00633-TDS-JEP   Document 2   Filed 07/17/18   Page 5 of 11

about the true end-of-life date resulted in further unnecessary expenditures by Vault, as Vault attempted to correct issues for a Tablet about to be terminated.

27. Additionally, in order to induce Vault to enter into a relationship with Dell, Dell, through its representatives Ms. Meek, Mr. Griffith and Mr. McDonald, knowingly failed to disclose the numerous technical problems associated with the Tablet, including issues with USB 3.1 technology and power oscillation. These undisclosed internal technical issues were the cause of excessive delays in the project and additional expenses incurred by Vault. The numerous case modifications caused further delay in the project and additional expenses incurred by Vault.

28. In December 2017, a sales representative of Dell, when seeking Vault's assistance in developing an enclosure for a more recent Dell tablet, made the unsolicited admission that the Venue line of tablets "sucked so Dell pulled out" of the tablet market for a period of time and that the Venue line of tablets "just wasn't meeting the demands of what was going on with our customers."

29. Long before Dell finally disclosed to Vault the end-of-life for the Venue Tablet on December 1, 2016, Dell, including its representatives identified above, was well aware that its Venue Tablet was unsatisfactory and would have to be retired soon. Nevertheless, Dell, including its representatives identified above, never disclosed to Vault either the technical issues with the Tablet or the true end-of-life date.

30. As a result of Dell's false representations and concealments, Vault expended substantial resources for employee labor, travel, shipping, equipment, and other expenses related to the project. Vault incurred debt, engaged numerous vendors, and expended numerous internal resources. In total, Vault has suffered damage in an amount well over a million dollars due to Dell's fraudulent conduct.

6

Case 1:18-cv-00633-TDS-JEP   Document 2   Filed 07/17/18   Page 6 of 11

## FIRST CLAIM FOR RELIEF
(Breach of Contract)

31. The allegations contained in the preceding paragraphs are incorporated by reference as if fully set forth herein.

32. The purchase orders arranged by Dell between Dell's purchasing agents (WWT and Synnex) and Vault are valid contracts in the total amount of $982,428.00.

33. Vault was selected by Dell to develop the Product and Dell, through its purchasing agents, agreed to purchase the Product units and components to the Product units.

34. Representatives from both Dell and Oracle confirmed that the Product units worked properly.

35. The purchase orders have not been canceled.

36. Dell has acknowledged that it owes the full amount of the purchase orders price to Vault.

37. Dell has repudiated the contract by refusing to pay Vault the purchase orders price.

38. Dell's breaches of contract have caused, and continue to cause, damages to Vault in an amount no less than the full amount of the purchase orders price, $982,428.00, such amount to be proven at trial. Vault is entitled to recover same from Dell.

## SECOND CLAIM FOR RELIEF
(Action for Contract Price)

39. The allegations contained in the preceding paragraphs are incorporated by reference as if fully set forth herein.

40. Dell's purchasing agents, WWT and Synnex, agreed to purchase Product units and components from Vault at a price of $982,428.00.

41. Representatives from Dell and Oracle confirmed that the Product units worked properly.

42. At Dell's direction, Vault designed these Products units specifically for Oracle. The Product units and components contain the Oracle trademarked logo, custom programming, and physical modifications based on Oracle's instructions and specifications as conveyed to Vault by Dell.

43. Oracle canceled its order with Dell after learning the true end-of-life date of the product.

44. Both Dell and Vault have expended reasonable efforts to find an alternative buyer for the Product units, but none has been found.

45. Dell has not paid Vault the purchase orders price despite representatives from Dell acknowledging the debt owed.

46. Pursuant to N.C. Gen. Stat. § 25-2-709, Vault is entitled to the entire purchase orders price of $982,428.00, plus incidental expenses incurred.

### THIRD CLAIM FOR RELIEF
(Fraud)

47. The allegations contained in the preceding paragraphs are incorporated by reference as if fully set forth herein.

48. Vault is entitled to recover from Dell for fraud.

49. As alleged herein, in order to induce Vault to enter into the agreement with Dell to develop and produce the Product, Dell, through its representatives Ms. Meek, Mr. Griffith and Mr. McDonald, falsely represented that the end-of-life date for the Tablet would not occur before February 2018 and concealed the numerous technical problems affecting the Tablet. In addition, Dell, through its representatives Ms. Meek, Mr. Griffith and Mr. McDonald, continued to conceal

8

the information regarding the end-of-life date for the Tablet until the very day that the end-of-life became effective, December 1, 2016.

50. Dell, including its representatives identified above, knew, or should have known, at the time it made the foregoing false representations and concealments that such representations and concealments were false.

51. At the time Dell, through its representatives Ms. Meek, Mr. Griffith and Mr. McDonald, made the foregoing false representations and concealments, it knew or should have known that the foregoing information was material to Vault and that Vault would rely upon the representations and concealments in agreeing to develop and produce the Product and in its efforts to develop and produce the Product.

52. In fact, Vault reasonably and justifiably relied upon the false representations and concealments to its detriment by developing and producing thousands of Product units for a Tablet whose end-of-life date was far sooner than February 2018.

53. The conduct described above constitutes false representations of and concealments of material facts. Such fraudulent and deceitful conduct was reasonably calculated to deceive Vault and was done with the intent to deceive Vault.

54. As a consequence of the fraudulent and deceitful conduct perpetrated upon Vault by Dell, Vault has been damaged in an amount in excess of $25,000.00 and sufficient for jurisdiction under N.C. Gen. Stat. § 7A-243, such exact amount to be proven at trial by jury, and Vault is entitled to recover both compensatory and punitive damages therefore from Dell.

### FOURTH CLAIM FOR RELIEF
(Unfair and Deceptive Trade Practices)

55. The allegations contained in the preceding paragraphs are incorporated by reference as if fully set forth herein.

56. The actions taken by Dell, as alleged herein, constitute unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, which actions were taken in and affecting commerce because they were all done in the furtherance of commercial activity.

57. Dell was engaged in conduct in or affecting commerce in the State of North Carolina.

58. As a consequence of the unfair or deceptive acts or practices perpetrated upon Vault by Dell, Vault has been damaged in an amount in excess of $25,000.00 and sufficient for jurisdiction under N.C. Gen. Stat. § 7A-243, such exact amount to be proven at trial by jury, and pursuant to N.C. Gen. Stat. §§ 75-1.1, 75-16 and 75-16.1, Vault is entitled to the recovery of their actual damages, trebled, plus attorneys' fees and the other costs of this action from Dell.

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Enter judgment against Defendant on Plaintiff's First, Second, Third and Fourth Causes of Action;

2. Award Plaintiff punitive damages on Plaintiff's Third Cause of Action as allowed by N.C. Gen. Stat. § 1D-1, *et seq.*;

3. Award Plaintiff prejudgment and post-judgment interest as allowed by law;

4. Treble all damages so awarded against Dell pursuant to N.C. Gen. Stat. § 75-16;

5. Award Plaintiff its attorneys' fees and expenses pursuant to N.C. Gen. Stat. § 75-16.1 and N.C. Gen. Stat. § 6-21.2;

6. For a jury trial on all matters so triable; and

7. Provide such additional relief as the Court may deem just and proper.

This the 18th day of May, 2018.

_____
Kearns Davis
N.C. State Bar No. 22014
kdavis@brookspierce.com
Benjamin R. Norman
North Carolina Bar No. 32852
bnorman@brookspierce.com
Daniel L. Colston
N.C. State Bar No. 52083
dcolston@brookspierce.com

*Attorneys for Plaintiff*

OF COUNSEL:
BROOKS, PIERCE, McLENDON,
    HUMPHREY & LEONARD, L.L.P.
Post Office Box 26000
Greensboro, N.C. 27420-6000
Tel: (336) 373-8850
Fax: 336.378.1001