IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

VAULT, LLC,                       )
                                  )
            Plaintiff,            )
                                  )
        v.                        )      1:18-CV-00633
                                  )
DELL INC.,                        )
                                  )
            Defendant.            )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

Plaintiff Vault, LLC ("Vault") brings this action against
Dell Inc. ("Dell") for breach of contract, fraud, and unfair and
deceptive trade practices arising out of a business relationship.
(Doc. 2.)  Before the court is Dell's motion to dismiss the
complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or,
in the alternative, to transfer venue pursuant to 28 U.S.C.
§ 1404(a) based on a forum-selection provision of an agreement
between the parties.  (Doc. 7.)  Vault opposes the motion and moves
to seal its response brief and an attachment.  (Doc. 13.)  For the
reasons set forth below, the court declines to address the motion
to dismiss, grants the motion to transfer, and denies the motion
to seal as moot.

## I.   BACKGROUND

The allegations of the complaint, taken in the light most
favorable to Vault, as well as evidence submitted by the parties

appropriate for consideration at this stage as to the motion to transfer shows the following:

Dell is a corporation organized under the laws of the state of Delaware, doing business in North Carolina. (Doc. 2 ¶ 2.) Vault is a limited liability company organized under the laws of North Carolina, with a principal place of business in Guilford County, North Carolina. (Id. ¶ 1.) Vault is an "industry-leading producer of tablet enclosures and has worked with a variety of electronics companies." (Id. ¶ 5.)

In October 2015, Vault was invited by Sherie Meek (now "Stephenson"[1]), Dell's Program Manager of Original Equipment Manufacturers ("OEMs"), to design a Venue 8 Pro 5855 Product Sleeve enclosure (the "product") for a Dell Venue 8 Pro 5855 electronic tablet. (Id. ¶ 6.) Meek told Vault that the tablet would be distributed through Dell sales representatives and through Dell's OEM customers. (Id.) Meek and her team represented to Vault President James Cagle that a Dell OEM, Oracle/Micros ("Oracle"), needed "'tens of thousands' of product units" and that the project would have an estimated value of over $20 million. (Id. ¶¶ 7–8.) When Cagle expressed concerns about designing the product because of the frequency with which tablets are updated in the electronics

---

[1] The declaration of Sherie Stephenson explains that although her current last name is "Stephenson," throughout her employment with Dell she "most often used her maiden name, Sherie Meek, for professional interactions, including communicating with other businesses." (Doc. 8-2 ¶ 2.)

industry, Meek and Dell representatives Mike Griffith and John McDonald guaranteed that the "end-of-life date" for the tablet would occur no earlier than February 2018. (Id. ¶ 10.)

Dell and Vault entered into a Master Relationship Agreement ("MRA"),[2] effective December 10, 2015, which states that it sets forth "the only terms under which Dell will purchase and license Solutions [defined as hardware, software, and other related services] from Provider [Vault]." (Doc. 8-1 at 2; Doc. 14-1 §§ 1.9, 2.1.) The MRA provides further that it "shall apply to all Solutions purchased from Provider [Vault]." (Doc. 8-1 at 2.) Among the other provisions is a forum-selection clause that states:

> Provider [Vault] and Dell irrevocably submit and consent to the exclusive jurisdiction and venue of the U.S. District Court for the Western District of Texas (Austin Division) or if there is no basis for federal jurisdiction, then any claims must be brought in the Texas State District Court in Williamson County, Texas. The Parties agree that such courts shall be the exclusive proper forum for the determination of any claim or dispute arising out of, or in connection with, this agreement and waive any objection to venue or convenience of forum.

(Doc. 8-1 § 12.8.)

Vault contends that, relying on the representations of the Dell personnel noted above, it entered into an agreement with Dell (the date not alleged in the complaint) to develop, design, and manufacture the Venue 8 Pro 5855 Sleeve tablet enclosures. (Doc.

---

[2] The MRA is not expressly mentioned in the complaint but, for the reasons noted infra, may be considered by the court as to Dell's motion to transfer venue.

2 ¶ 12.)  Dell allegedly arranged for its "purchasing agents,"
World Wide Technology ("WWT") and Synnex Corporation ("Synnex"),
to purchase product units from Vault pursuant to purchase orders.
(Id. ¶ 13.)    At  Dell's  direction,  Vault  completed  case
modifications to the product that were not in the original scope
of the product and manufactured custom-made product units for
Oracle that included trademarked logos, custom programming, and
custom physical modification.  (Id. ¶¶ 15–20.)

     In December 2016, Oracle canceled its order with Dell.  (Id.
¶ 22.)  Vault worked with Dell to find a substitute purchaser for
the product units, and while Dell committed to issue new purchase
orders to Vault in place of the WWT and Synnex purchase orders, it
failed to do so.  (Id. ¶ 23.)  Vault has been left with thousands
of custom product units with modifications that "have essentially
rendered the Product units unsalable after Oracle canceled its
order with Dell," because no other purchasers are interested in
them.  (Id. ¶ 25.)

     Vault filed suit against Dell in the General Court of Justice,
Superior Court Division, Guilford County, North Carolina.  (Doc.
2.)  Dell timely removed the action to this court (Doc. 1) and
brought the instant motion to dismiss or, in the alternative, to
transfer (Doc. 7).  Having been fully briefed, the motions are
ready for consideration.

## II.  ANALYSIS

### A.  Motion to Seal

As a preliminary matter, the court addresses Vault's motion to seal its unredacted response brief and a portion of the MRA attached as Exhibit 1 (Docs. 14, 14-1).  (Doc. 13.)  Vault has filed a redacted version of the MRA in the public record (Doc. 12-1) and moves to seal the original only because Dell filed a redacted version of the MRA in support of its motion (Doc. 8-1) and Vault's response seeks to rely on page 2 of the document. (Doc. 13.)  Dell has since stated, however, that it does not contend that the provisions at issue meet the standards for sealing (Doc. 18 at 1) and indeed quotes portions of the same material in its reply brief.  (Doc. 17 at 2, 7.)  Consequently, Dell has waived any claim of confidentiality as to page 2 of the MRA, and Vault's motion to seal will be denied as moot.  The documents filed under seal (Docs. 14, 14-1, 14-2) shall be be unsealed.

### B.  Motion to Transfer Pursuant to § 1404(a)

Vault argues that Dell's motion to dismiss or transfer should be denied because it relies on the forum-selection and choice-of-law provisions of Dell's MRA, which the complaint does not allege is involved.  (Doc. 14 at 4.)  Vault argues that the MRA was not attached to, referred to, or "integral to" the complaint, "is not an agreement to develop, design, or manufacture anything," is not relied upon by it, and therefore should not be considered by the

court on the Rule 12(b)(6) motion to dismiss.  (Doc. 14 at 4-5.)
Dell contends that the MRA is incorporated by reference in the
complaint and has attached a copy to its brief.  (Doc. 8 at 3 n.2;
Doc. 8-1.)  Neither party addresses whether the MRA can be
considered for purposes of deciding the motion to transfer.

In reviewing a motion to transfer, the court may consider
evidence outside the pleadings.  Brooks-Williams v. Keybank, N.A.,
No. WDQ-15-559, 2015 U.S. Dist. LEXIS 169188, at *2 n.4 (D. Md.
Dec. 17, 2015).  Courts regularly do so.  See, e.g., id.; Weishaupt
v. Boston College, No. 1:11-cv-1122, 2012 WL 1439030, at *3-6
(M.D.N.C. April 24, 2012).  In fact, such evidence is usually
necessary to meet the moving party's burden of proving that the
balance of the § 1404(a) factors weighs in favor of transfer.  See,
e.g., Weishaupt, 2012 WL 1439030, at *2.  Because the court will
decline to consider the motion to dismiss, it need not determine
whether the MRA and other exhibits attached to the motion are
incorporated into the complaint by reference.  For purposes of
deciding the motion to transfer, the court may consider all
properly authenticated exhibits that are relevant.  These include
the MRA (Doc. 8-1), two declarations of Sherie Stephenson (Docs.
8-2, 17-1), page 2 of the MRA (Docs. 12-1, 14-1), and the
declaration of James Cagle (Docs. 12-2, 14-2).

Dell urges the court to transfer this action to the Western
District of Texas based on the forum-selection clause of the MRA,

which Dell asserts is the only contract entered into between Vault and Dell referenced in the complaint and governs their relationship. (Doc. 8 at 1-2.) Vault opposes application of the forum-selection clause and argues that the MRA is not relevant to its claims. (Doc. 14 at 5.) For the reasons laid out below, the court finds that the forum-selection clause of the MRA governs the claims in this action.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Section 1404(a) "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex., 571 U.S. 49, 59 (2013). "[A] proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" Id. at 59-60 (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). Where there is a valid forum-selection clause, a modified version of the common-law doctrine of *forum non conveniens* applies. Atl. Marine, 571 U.S. at 60-66; BAE Sys. Tech. Sol. & Servs. v. Republic of Korea's Def. Acquisition Program Admin., 884 F.3d 463, 470-71 (4th Cir. 2018) (finding the modified *forum non conveniens*

framework applies only to mandatory forum-selection clauses).

If a forum-selection clause is mandatory rather than permissive, courts in the Fourth Circuit enforce the forum-selection clause unless it would be unreasonable to do so. BAE, 884 F.3d at 470. A mandatory forum-selection clause "requires litigation to occur in a specified forum," while "a permissive clause permits litigation to occur in a specified forum but does not bar litigation elsewhere." Id. "A forum selection clause is permissive unless it contains 'specific language of exclusion.'" Id. at 472. A mandatory forum-selection clause "identifies a particular state or court as having exclusive jurisdiction over disputes arising out of the parties' contract and their contractual relationship." S & D Coffee, Inc. v. GEI Autowrappers, 995 F. Supp. 607, 609 (M.D.N.C. 1997). Clauses providing that a particular place constitutes the "sole," "only," or "exclusive" forum have been found to be mandatory. BAE, 884 F.3d at 472.

Here, the forum-selection clause in the MRA provides that the parties "irrevocably submit and consent to the exclusive jurisdiction and venue of the U.S. District Court for the Western District of Texas (Austin Division) or if there is no basis for federal jurisdiction, then any claims must be brought in the Texas State District Court in Williamson County, Texas." (Doc. 8-1 § 12.8.) It further states that "the parties agree that such courts shall be the exclusive proper forum for the determination

of any claim or dispute arising out of, or in connection with, this agreement and waive any objection to venue or convenience of forum." (Id.) The forum-selection clause is mandatory, because it designates the U.S. District Court for the Western District of Texas as the exclusive proper forum for cases with a basis for federal jurisdiction and, in cases where there is no basis for federal jurisdiction, the Texas State District Court in Williamson County as the exclusive proper forum. (Id.) This is consistent with clauses typically found to be mandatory. See BAE, 884 F.3d at 472; Turfworthy, LLC v. Dr. Karl Wetekam & Co. KG, 26 F. Supp. 3d 496, 506 (M.D.N.C. 2014). The clause identifies the specific courts in which the parties agree to bring any action (one court for actions based on federal jurisdiction and one court for actions lacking federal jurisdiction) and includes language providing that these two courts shall be the exclusive forums. See Garrett v. MD Rehab, LLC, No. 3:16cv765, 2016 WL 7478975, at *1-2 (W.D.N.C. Dec. 29, 2016) (finding that a forum-selection clause providing that the parties consented to the jurisdiction of "such courts" meant the federal and state courts of Delaware and was mandatory).

Where the clause is mandatory, the modified *forum non conveniens* framework outlined in Atlantic Marine applies, and the usual § 1404(a) analysis is modified in three ways. Atl. Marine, 571 U.S. at 62-66; BAE, 884 F.3d at 471. First, the plaintiff's choice of forum merits no weight. Atl. Marine, 571 U.S. at 63.

"Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." Id. Second, the court must not consider the parties' private interests aside from those embodied in the forum-selection clause, and instead should only consider public interests. Id. at 64. Third, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice of law rules." Id.

Under this modified framework, the burden rests with Vault to establish that transfer to the mandatory forum, the Western District of Texas, is unwarranted. Id. at 63. Vault opposes enforcement of the forum-selection clause and urges the court to analyze Dell's motion to transfer under the usual § 1404(a) standard. (Doc. 14 at 17–18.) Vault provides three arguments to support its position. (Id. at 17.)

First, Vault argues that the MRA is only an unenforceable agreement to agree and is not the agreement it alleges in the complaint. (Id. at 5, 17.) Vault contends that the MRA fails to specify a product, price, or quantity, merely sets forth terms for a future agreement between the parties, and is not binding in the

absence of a Dell purchase order (or "PO").[3]  (Id. at 11.)
According to Vault, the only purchase orders referenced in the
complaint were issued by entities other than Dell — WWT and Synnex.
(Id.)

Dell responds that the MRA is a valid contract because it
"'appli[ies] to all Solutions purchased from [Vault],' [Doc. 8-1]
at 1, and is supported by mutual consideration, including
confidentiality obligations, id. § 12.3; publicity limitations,
id. § 12.4; a forum selection clause, id. § 12.8; and an
integration clause that supersedes all prior agreements.  Id.
§ 12.13."  (Doc. 17 at 9–10 (first and second alterations in
original).)  Dell characterizes Vault's attempt to avoid the MRA
by relying on POs by WWT and Synnex as "internally contradictory
and fatal" to its claim that Dell is responsible contractually for
purchase orders issued by third parties.  (Id. at 10.)

The court need not decide whether the MRA itself, which
neither party disputes having signed (Doc. 8-1 at 2), constitutes
an enforceable contract, especially where the entire document is
not before the court.  This is because all parties agree that it
would be an enforceable contract when combined with related

_____

[3] A "Dell PO" is defined in the MRA as "a purchase order or other mutually
acceptable ordering document or method issued by Dell to purchase or
license any Solution described in a Schedule."  (Doc. 14-1 § 1.2).

purchase orders (Doc. 14 at 10–12; Doc. 17 at 9–10).[4]

"[W]here the execution of one contract depends upon the execution of other contracts, the contracts must be construed collectively." Encompass Advisors, Ltd. v. Unapen, Inc., 686 F. Supp. 2d 607, 613–14 (W.D.N.C. 2009) (quoting 11 Richard A. Lord, Williston on Contracts § 30:26 (4th ed. 2018)). Here, the MRA clearly contemplates the execution of subsequent purchase orders, which it purports to govern. Dell contends, and has provided evidence to suggest, that the MRA governs its business relationship

---

[4] Whether such a master agreement constitutes an enforceable contract independent of subsequent purchase orders depends on the specific promises made. Courts find in some instances that an overarching agreement is enforceable on its own but in other instances that such an agreement, without a purchase order, is merely an unenforceable agreement to agree. Compare Charleston Marine Containers Inc. v. Sherwin-Williams Co., 165 F. Supp. 3d 457, 463–65 (D.S.C. 2016) (holding that a choice of law provision contained in a supply agreement with an integration clause pursuant to which plaintiff agreed to purchase products applied to subsequent purchase orders, because the court found that the supply agreement was an enforceable requirements contract), and Fifth Third Bank v. McClure Props., Inc., 724 F. Supp. 2d 598, 603 (S.D.W. Va. 2010) (finding that a commitment letter to enter into future loans was a valid and enforceable contract), and Orion Worldwide Travel, LLC v. Commonwealth Foreign Exch., Inc., No. 1:09cv1148, 2009 WL 4064109, at *4 (E.D. Va. Nov. 20, 2009) (finding that an agreement outlining the relationship between the parties in future currency transactions was the primary contract and its terms governed the subsequent contracts for specific currency transactions), with Dynport Vaccine Co. LLC v. Lonza Biologics, Inc., No. JKB-14-2921, 2015 WL 2036510, at *3–4 (D. Md. April 30, 2015) (holding that a basic ordering agreement, in which one company agreed to provide services pursuant to task orders, lacked the "critical element of mutuality of obligation" necessary to constitute an enforceable contract, and instead finding that the task orders were the relevant contracts), and Venture Media Ltd. P'ship v. Colt's Plastics Co., Inc., No. 98-1155, 168 F.3d 484, at *3 (4th Cir. 1999) (holding that a proposal form containing prices and general conditions was an offer, and the subsequent purchase orders were the form of acceptance).

with Vault;[5] this would include the WWT and Synnex purchase orders
— at least under Vault's theory of the case.  <u>See</u> (Docs. 8-1, 8-
2, 17-1.)  Whether or not true, it is enough that Vault hinges
Dell's contractual liability on the claim that WWT and Synnex were
Dell's "purchasing agents."  (Doc. 2 ¶¶ 13, 14, 32, 33, 40.)
Vault's breach of contract claim alleges that "<u>Dell</u>, through its
purchasing agents [WWT and Synnex], agreed to purchase the Product
units and components to the Product units" and that "<u>Dell</u> has
repudiated the contract by refusing to pay Vault the purchase
orders price."  (Doc. 2 ¶¶ 32–33, 37 (emphasis added).)  Vault
alleges further that "<u>Dell's</u> breaches of contract" have damaged
Vault in the amount of the purchase orders from WWT and Synnex —
$982,428.  (<u>Id.</u> ¶¶ 32, 38 (emphasis added).)  These are allegations
that <u>Dell</u> agreed to purchase the product units and that <u>Dell</u>, not
WWT or Synnex, repudiated the contract.  (<u>Id.</u> ¶¶ 33, 37–38.)[6]
Under Vault's own theory, the purchase orders would be incidental
to the MRA.  <u>Cf.</u> <u>Sucampo Pharm., Inc. v. Astellas Pharma, Inc.</u>,

---

[5] In her declaration, Stephenson states that Dell and Vault entered into
the MRA "relating to and governing that project" and that the copy
attached to Dell's motion is a true and correct copy.  (Doc. 8-2 ¶ 4.)
In her second declaration, Stephenson states that "Dell and Vault entered
into a single contract, the [MRA] attached to my first declaration, that
governed all purchases of Vault Tablet sleeves for the Dell Venue 8 Pro
5855 tablet that are at issue in Vault's Complaint."  (Doc. 17-1 ¶ 3.)

[6] Vault also argues that the MRA does not apply to disputes between Vault
and Dell Inc. because "Dell" as used in the MRA means "Dell USA L.P.,
on behalf of itself, Dell Inc. and Dell Inc.'s direct and indirect
subsidiaries."  (Doc. 14 at 8 n.1.)  This argument is unpersuasive.

471 F.3d 544, 551 (4th Cir. 2006), abrogated on other grounds as recognized by S. Coal Corp. v. IEG PTY, Ltd., No. 2:14cv617, 2016 WL 8735622, at *2 (E.D. Va. Feb. 26, 2016).

Vault's argument urging the court to ignore the terms of the MRA on the basis that it is unenforceable without the issuance of "Dell" purchase orders fails because, based on the evidence before the court and Vault's own complaint, if Dell has any contractual liability to Vault, the WWT and Synnex purchase orders can only logically be issued pursuant to the terms of the MRA. Cf. id. at 551 ("There is no reasonable reading of the word 'incidental' in the forum-selection clause that would exclude the Safety Agreement from its coverage."). Vault's attempt to avoid the MRA contradicts its theory of liability, which is dependent upon Dell's contractual liability to it for breaches of contracts with Synnex and WWT.

"In the Fourth Circuit, when a primary contract governing the transactions between two parties contains a forum selection clause, such a clause will apply to incidental agreements entered into pursuant to the original contract." Orion Worldwide Travel, LLC v. Commonwealth Foreign Exch., Inc., No. 1:09cv1148, 2009 WL 4064109, at *4 (citing Sucampo, 471 F.3d at 551). The forum-selection clause in the MRA applies to "any claim or dispute arising out of, or in connection with, this agreement." (Doc. 8-1 § 12.8.) This includes Vault's alleged agreement with Dell to manufacture tablet sleeves (Doc. 2 ¶ 12 ("Vault entered into an

agreement with Dell to develop, design, and manufacture the Venue 8 Pro 5855 Sleeve enclosure for the Tablet.")), Vault's claim that Dell made false representations "in order to induce Vault to enter into the agreement with Dell to develop and produce the Product" (id. ¶ 49), and its claim that Dell contracted with it through the WWT and Synnex purchase orders (id. ¶¶ 32-33, 36-38). The MRA repeatedly expresses the parties' intent to have the MRA apply to all purchases between Vault and Dell, (Doc. 8-1 at 2 ("This agreement shall apply to all Solutions purchased from provider."); Doc. 14-1 § 2.1 ("This Agreement sets forth the only terms under which Dell will purchase and license Solutions from Provider [Vault].")), that the MRA terms constitute the entire agreement between the parties with respect to the subject matter in the MRA (Doc. 8-1 § 12.13), and that the terms of the MRA apply to all Dell purchase orders and replace any other agreements with respect to the subject matter of the MRA (id.; Doc. 14-1 § 2.2). See Drews Distrib., Inc. v. Silicon Gaming, Inc., 245 F.3d 347, 350-51 (4th Cir. 2001) (finding that because the parties agreed to arbitrate any claim "'arising out of or related to' the Distributor Agreement," it was "immaterial that the present dispute grew out of the Letter Agreement, which contains no arbitration clause, if the dispute also 'relates to' the Distributor Agreement"); Charleston Marine Containers Inc. v. Sherwin-Williams Co., 165 F. Supp. 3d 457, 463-64 (D.S.C. 2016) (finding that an integration

15

clause, which stated that the agreement constituted "the entire agreement between the parties . . . with reference to the subject matter hereof," indicated that the agreement was the final expression of the parties' agreement and precluded the purchase orders from altering the parties' obligations); Encompass Advisors, 686 F. Supp. 2d at 611–12 (finding a third agreement, which was the alleged basis of breach but was not directly mentioned in the complaint, to be "integral to the relationship of [the] parties and plaintiff's causes of action").[7]  Consequently, Vault cannot avoid the MRA by simply omitting reference to it in

---

[7] Federal courts determine the validity of a forum-selection clause according to federal law. Albemarle Corp. v. AstraZeneca UK Ltd., 628 F.3d 643, 650 (4th Cir. 2010).  "A crucial distinction exists between the interpretation of a forum selection clause and the enforcement of such a clause."  Queen City Pastry, LLC v. Bakery Tech. Enters., LLC, No. 5:14-cv-143, 2015 WL 3932722, at *3 (W.D.N.C. June 26, 2015).  While the body of law specified in a valid choice-of-law clause governs the interpretation of a forum-selection clause, federal law governs its enforcement.  Id.  "However, when the resolution of a choice-of-law determination would not alter the disposition of a legal question, a reviewing court need not decide which body of law controls."  Id. (quotation marks omitted).  Here, the choice-of-law clause points to Texas law as governing (Doc. 8-1 § 12.8), though Vault argues that North Carolina law should apply (Doc. 14 at 12).  Because examining the contract under either state's law will not affect the outcome of this motion, the court will analyze the interpretation of the forum-selection clause under North Carolina law.  Compare USAA Texas Lloyds Co. v. Menchaca, 545 S.W.3d 479, 501 n.21 (Tex. 2018) (elements of a valid contract under Texas law are offer, acceptance, a meeting of the minds on the essential terms of the contract (mutual assent), each party's consent to the terms, and execution and delivery of the contract with the intent that it be mutual and binding), with Se. Caissons, LLC v. Choate Constr. Co., 784 S.E.2d 650, 654 (N.C. Ct. App. 2016) (North Carolina law requires offer, acceptance, consideration, and mutuality of assent to the contract's essential terms to form a valid contract).

the complaint.[8]

Second, Vault argues that the MRA fails to identify what claims fall within the scope of its exclusive jurisdiction provision. (Doc. 14 at 17.) As Dell points out, this argument is unpersuasive. (Doc. 17 at 9.) The MRA clearly identifies the scope of this provision, which states:

> The parties agree that such courts shall be the exclusive proper forum for the determination of <u>any claim or dispute arising out of, or in connection with, this agreement</u> and waive any objection to venue or convenience of forum.

(Doc. 8-1 § 12.8 (emphasis added).) The Fourth Circuit has held that a forum-selection clause containing "'in connection with' language broadens the scope of the clause beyond pure contract claims and extends it to 'every dispute between the parties having a <u>significant relationship to the contract</u> regardless of the label attached to the dispute.'" <u>Bartels v. Saber Healthcare Grp., LLC</u>, 880 F.3d 668, 678 (4th Cir. 2018) (quoting <u>J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.</u>, 863 F.2d 315, 321 (4th Cir. 1988)).

---

[8] Even if the alleged "agreement" with Dell were some agreement other than the MRA, Vault still cannot avoid the MRA. If the alleged agreement came first, Vault would nevertheless be bound by the MRA, which contains an integration clause that supersedes all prior agreements, written or oral. (Doc. 8-1 § 12.13.) If the alleged agreement came after the MRA, it falls within the MRA's broad terms, as explained above. Moreover, the MRA was executed effective December 10, 2015 (<u>id.</u> at 2), while Vault allegedly entered into the WWT contracts on June 30, July 25, and September 29, 2016 (Doc. 2 ¶ 13) and the Synnex contracts in "late August to early October 2016 (<u>id.</u> ¶ 14). Thus, any contractual relationship founded on the WWT and Synnex work, which is the basis of Vault's lawsuit, post-dates the MRA.

Thus, the MRA broadly includes Vault's alleged dispute, including its fraud and unfair trade practice claims.

Third, Vault argues that the MRA "specifies an 'exclusive proper forum' that does not exist and which is not the Western District of Texas." (Doc. 14 at 17.) According to Vault, the MRA's phrase "such courts" creates an unenforceable obligation, because the Western District of Texas and the Texas State District Court in Williamson County, Texas, are not a single forum in which claims can be brought. (Id. at 9.) Dell contends that the forum-selection clause clearly orders the priority of forums, rendering the phrase "such courts" unambiguous and enforceable. (Doc. 17 at 8-9).

Read as a whole, the phrase "such courts" in the MRA plainly indicates that the Western District of Texas has exclusive jurisdiction over claims subject to federal jurisdiction, and the Texas State District Court in Williamson County, Texas, has exclusive jurisdiction over claims lacking federal jurisdiction. (Doc. 8-1 § 12.8.) There is no question, therefore, that "such courts" means that the exclusive proper forum for claims subject to federal jurisdiction is the Western District of Texas. See Garrett, 2016 WL 7478975, at *2-3 (enforcing forum-selection clause providing that "such courts" meant the state and federal courts of Delaware and ordering transfer under the mandatory forum-selection clause pursuant to Atlantic Marine); Brown v. Advanced

Dig. Sols., No. 5:17-cv-00034-RLV-DSC, 2017 WL 3838640, at *10–11
(W.D.N.C. Sept. 1, 2017) (finding that a forum-selection clause
providing that jurisdiction for the resolution of disputes "shall
lie in the state or federal courts of Marion County, Indiana" was
mandatory and enforceable because it contained language that
"indicate[d] specific intent for exclusive venue" (quotation marks
omitted) (emphasis added)).

For all these reasons, the forum-selection clause in the MRA
applies to Vault's claims, and none of Vault's arguments weighs
against enforcement of the forum-selection clause in this case.

"A forum selection clause is presumed valid and should be
enforced unless there is a 'clear showing' that it is unreasonable
under the circumstances." Brown, 2017 WL 3838640 at *12 (quoting
Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996)). A
forum-selection clause is unreasonable if (1) it was induced by
fraud or overreaching; (2) the complaining party will be deprived
of his day in court because of the grave inconvenience or
unfairness of the selected forum; (3) the fundamental unfairness
of the chosen law may deprive the plaintiff of a remedy; or (4)
enforcement of the clause would contravene a strong public policy
of the forum state. The Hipage Co., Inc. v. Access2Go, Inc., 589
F. Supp. 2d 602, 612 (E.D. Va. 2008) (quotation marks omitted)
(quoting Allen, 94 F.3d at 928). Vault has failed to make any
argument that any of the four factors provided by Allen supports

a finding of unreasonableness in this case.[9]  The court therefore finds the forum-selection clause valid and enforceable.

Under the modified § 1404(a) framework applicable under Atlantic Marine, Vault's choice of forum merits no weight, and the court does not consider arguments about the parties' private interests.  Atl. Marine, 571 U.S. at 63–64.  Accordingly, the court does not consider the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."  Id. at 62 n.6 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981)).  The public interest factors the court may consider include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law."  Id. (alteration in original) (quoting Piper Aircraft, 454 U.S. at 241 n.6)).  The Supreme Court

_____

[9] While one of Vault's claims alleges fraud on the ground that Dell made false representations in order to induce Vault to enter into the agreement with Dell, "[i]n determining whether to enforce a forum selection clause, 'it is the forum selection clause itself that must be the subject of the fraud, and not the whole agreement.'"  Brown, 2017 WL 3838640, at *11 (quoting Mid Atl. Paper, LLC v. Scott Cty. Tobacco Warehouses, Inc., No. 1:03cv00126, 2004 WL 326710, at *1–2 (W.D. Va. Feb. 23, 2004).  Vault does not argue that the forum-selection clause itself was induced by fraud.

20

has noted that these public interest factors "will rarely defeat a transfer motion," such that "the practical result is that forum-selection clauses should control except in unusual cases." Id. at 64.

The only public interest factor that Vault argues weighs against transfer is that this court is an appropriate forum to apply North Carolina law, which Vault asserts controls the claims asserted in this case. (Doc. 14 at 19.) Even if true, familiarity with local law is insufficient to weigh against transfer.[10] See Atl. Marine, 571 U.S. at 67-68 (noting that "federal judges routinely apply the law of a State other than the State in which they sit," and that the district court erred in holding that "the public-interest factors weighed in favor of keeping the case in Texas because Texas contract law is more familiar to federal judges in Texas than to their federal colleagues in Virginia"). Therefore, the public interest factors lean in favor of transferring this action.

Where, as here, a defendant files a § 1404(a) motion, and the

---

[10] Under the modified § 1404(a) framework, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." Atl. Marine, 571 U.S. at 64. Accordingly, regardless of whether the transferee court finds that the choice-of-law provision in the forum-selection clause applies, the Western District of Texas will not need to apply North Carolina choice-of-law rules, which reduces any weight that might have been given to the public interest factor that looks to the familiarity of the transferee court with the applicable law. Id. at 67. The transferee court, and not this court, will determine the applicable law in this case.

parties have agreed to a valid mandatory forum-selection clause, the district court "should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." Atl. Marine, 571 U.S. at 52. While the Fourth Circuit has recognized that the Supreme Court has "left open the question of whether a defendant could obtain dismissal under Fed. R. Civ. P. 12(b)(6)," BAE, 884 F.3d at 470 n.5, the court has made clear that "§ 1404(a) and the *forum non conveniens* doctrine provide appropriate enforcement mechanisms" for a forum-selection clause. Atl. Marine, 571 U.S. at 61. Accordingly, the court will grant Dell's motion to transfer the action and will decline to address the motion to dismiss.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Vault's motion to seal (Doc. 13) is DENIED AS MOOT;

IT IS FURTHER ORDERED that Dell's motion to dismiss or transfer venue (Doc. 7) is GRANTED to the extent of the request to transfer, and this action is TRANSFERRED to the Western District of Texas, Austin Division. The motion to dismiss is DENIED AS MOOT and WITHOUT PREJUDICE.

The Clerk of Court is directed to close this case.

/s/   Thomas D. Schroeder
United States District Judge

January 4, 2019